Filed 4/13/21  P. v. Silliman CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yuba)

----

| | |
|---|---|
| THE PEOPLE, | C091360 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF12000001202) |
| v. | |
| WILLIAM VINCENT SILLIMAN JR., | |
| Defendant and Appellant. | |

In 2012, a jury found defendant William Vincent Silliman, Jr., guilty of second degree murder, and the trial court sentenced him to an indeterminate term of 20 years to life in prison.  We affirmed the judgment in defendant's previous appeal from his underlying convictions.  (*People v. Silliman* (May 26, 2015, C072774), [nonpub. opn.] (*Silliman*).)  While serving his sentence, the Legislature enacted Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) (Stats. 2018, ch. 1015, §§ 1-4), which

1

amended the law governing murder liability under felony murder and natural and probable consequences theories, and provided a new procedure under Penal Code section 1170.95 for eligible defendants to petition for recall and resentencing. (All statutory section references that follow are found in the Penal Code unless otherwise stated.)

Defendant filed a section 1170.95 petition, but the trial court denied it after reviewing the parties' pleadings, our prior unpublished opinion, the court's file, and the transcript of defendant's trial, over which the trial court presided. In its written decision, the trial court found that the evidence at trial established defendant was a major participant who acted with reckless indifference to human life, making him ineligible for relief. It also concluded that Senate Bill 1437 unconstitutionally amended Proposition 7 and Proposition 115.

Defendant appeals, arguing Senate Bill 1437 is constitutional and that the court erred in determining he was ineligible for relief under section 1170.95. In his view, the trial court applied the wrong legal analysis when it analyzed his continuing murder liability under the inapplicable felony-murder rule. Had the court applied the correct analysis, defendant argues, the evidence would have shown that he did not aid and abet the actual killer with the intent to kill. He contends the trial court should have determined after an order to show cause and a hearing whether the prosecutor could establish beyond a reasonable doubt that he was not entitled to relief under the statute.

On this record, we conclude the trial court erred in finding Senate Bill 1437 unconstitutional, and that the court engaged in improper fact finding before holding an evidentiary hearing because defendant made a prima facie case he was entitled to relief and nothing in the record showed he was precluded from relief as a matter of law. We shall reverse and remand for further proceedings consistent with section 1170.95. We express no opinion on whether defendant is entitled to relief under the statute.

FACTS AND PROCEDURAL HISTORY

To facilitate our review of the court's order denying defendant's section 1170.95 petition, we incorporate the facts and proceedings from our unpublished opinion affirming defendant's convictions in case No. C072774. (*Silliman, supra*, C072774 at pp. 2-3.) The facts underlying the crimes, according to our unpublished opinion, were as follows:

Defendant had known Marcus Hume for about a year before the homicide. (*Silliman, supra*, C072774 at p. 1.) Hume sometimes slept in the spare bedroom at defendant's apartment. (*Ibid.*)

Hume had served time in prison, and while incarcerated was associated with a prison gang committed to victimizing child molesters in prison. (*Silliman, supra*, C072774 at p. 1.) A week after his release from prison, Hume met a young woman named R.M. (*Ibid.*) R.M.'s mother told Hume that the murder victim, who Hume later described as a child molester, had a sex tape of R.M. (*Ibid.*) Hume tried to persuade the murder victim to hand over the sex tape, but he failed and a fight ensued. (*Ibid.*)

Defendant kept several weapons in his apartment. (*Silliman, supra*, C072774 at p. 1.) Defendant admitted to police that he owned the murder weapon, a shotgun, and had helped Hume saw it off. (*Id.* at pp. 1-2.) Defendant also told police he knew Hume intended to use the sawed-off shotgun to kill a man. (*Id.* at p. 2.) Hume denied saying he wanted to kill the victim, insisting he only wanted to beat him up and retrieve the sex tape. (*Ibid.*)

On the day of the murder, R.M.'s sister, brother, and two other young men gathered at defendant's apartment. (*Silliman, supra*, C072774 at p. 2.) Hume asked R.M.'s brother to "have his back" in a fight; the two other young men agreed to serve as lookouts. (*Ibid.*) Hume told everyone he intended to "fuck up" the victim. (*Ibid.*)

3

Defendant drove his truck to the scene of the crime with Hume in the passenger seat and R.M.'s siblings in the back; the lookouts walked. (*Silliman, supra*, C072774 at p. 2.) Defendant saw the sawed-off shotgun in Hume's jacket, and defendant himself was armed with a knife. (*Ibid.*) According to one of the lookouts, Hume said he just wanted to talk to the victim but would use the shotgun if the victim pulled a gun. (*Ibid.*) The lookout also said Hume intended to beat the victim "a little bit." (*Ibid.*)

Before the shooting, R.M.'s sister called the victim's girlfriend several times asking about the victim. (*Silliman, supra*, C072774 at p. 2.) The girlfriend called the victim and told him someone was looking for him. (*Id.* at pp. 2-3.) The victim said he suspected he was being set up. (*Id.* at p. 3.)

As the victim drove up to his girlfriend's house with a passenger, defendant pulled his truck alongside the victim's car. (*Silliman, supra*, C072774 at p. 3.) Defendant pulled his truck so close that the victim could not open his door. (*Ibid.*) Hume testified he saw a pistol in the victim's lap. (*Ibid.*) After a verbal exchange between Hume and the victim, defendant pulled forward but stopped when the victim started to get out of his car with a baseball bat. (*Ibid.*) Hume and R.M.'s brother said they saw the victim pass a handgun to his passenger. (*Ibid.*) A neighbor saw the passenger making motions she interpreted as loading a gun. (*Ibid.*)

Hume reached into his sleeve, pulled out the sawed-off shotgun and fired, hitting the victim with buckshot in his face, neck, and chest. (*Silliman, supra*, C072774 at p. 3.) A shot through the victim's eye was fatal. (*Ibid.*) The victim's passenger fled on foot, telling the victim's girlfriend the victim was dead. (*Ibid.*) A bloody bat was retrieved from beneath the victim's car. (*Ibid.*)

At trial, Hume admitted to the shooting, saying the victim was advancing and could have hit him with the bat if he had taken one more step. (*Silliman, supra*, C072774 at p. 3.) A detective who interviewed Hume at the time of his arrest said Hume admitted to the shooting but did not say that he had been afraid and did not mention the victim

having a bat or a gun.  (*Id.* at pp. 3-4.)  Hume said he was not offered any benefit in exchange for his testimony.  (*Id.* at p. 4.)  Hume pleaded guilty to murder because he was "the trigger man" and he "couldn't beat the third strike."  (*Ibid.*)

The trial court instructed the jury on imperfect self-defense and on the liability of an aider and abettor for the natural and probable consequences of a crime.  (*Silliman, supra*, C072774 at p. 4.)  The jury found defendant guilty of second degree murder and also of being a principal in a crime where a firearm was discharged from a motor vehicle with specific intent to cause great bodily injury; he was sentenced to 20 years to life in prison.  (§§ 187, subd. (a), 190, subd. (d).)  (*Silliman,* at p. 4.)

Defendant appealed his convictions, raising several alleged instructional errors.  (*Silliman, supra*, C072774 at pp. 4-8.)  He argued that the trial court should have instructed the jury on sudden quarrel/heat of passion, from which the jury might have concluded he was guilty only of voluntary manslaughter (*id.* at p. 4), and that the trial court's instruction on the natural and probable consequences doctrine was inadequate because it imposed an "all or nothing" choice on the jury by not mentioning voluntary manslaughter in the instruction about an aider or abettor's liability for murder under the natural and probable consequences doctrine.  (*Id.* at p. 8.)  We rejected both contentions and affirmed the judgment.  (*Id.* at pp. 6, 8.)

In January 2019, defendant filed a form petition for resentencing pursuant to section 1170.95.  On the form, he checked various boxes stating that a complaint was filed against him that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine, that at trial he was convicted of first or second degree murder pursuant to the felony-murder rule or the natural and probable consequences doctrine, and that he could not now be convicted of first or second degree murder because of changes made to sections 188 and 189, effective January 1, 2019.

5

Defendant's petition also checked a box specific to a conviction for second degree felony murder or second degree murder under the natural and probable consequences doctrine, claiming that he could not now be convicted of murder because of changes to section 188, effective January 1, 2019. Defendant requested that the court appoint him counsel.

Before deciding whether to appoint counsel, the trial court directed the People to serve defendant with a copy of their response to the petition. In their response, the People conceded that defendant was not the actual killer and was convicted under a theory of aiding and abetting under the natural and probable consequences doctrine, as well as a principal as to the section 190, subdivision (d) allegation. The People thus argued that "the focus should be whether the evidence was sufficient to show that [d]efendant was a major participant who acted with reckless indifference to human life when he provided the modified weapon, transportation, and other assistance to co-defendant Marcus Hume." In their view, the evidence at trial showed defendant was a major participant who acted with reckless indifference to human life, and he could still be held liable for second degree murder even after Senate Bill 1437's statutory changes.

Defendant retained private counsel, and counsel filed a reply brief. Defense counsel argued that defendant had established a prima facie case for relief, and that the People's opposition arguments were premature and should be dealt with at a hearing where they bore the burden of proving, beyond a reasonable doubt, that defendant was ineligible for resentencing.

In November 2019, the trial court issued a 28-page written decision denying the petition. The court first found that the mere filing of a petition did not satisfy defendant's prima facie burden. It then concluded that because Senate Bill 1437 effectively eliminated murder based on the natural and probable consequences doctrine--the theory upon which defendant had been found guilty--the appropriate analysis for determining whether defendant met his prima facie burden was whether defendant was a major

6

participant who acted with reckless indifference to human life for purposes of the felony murder-rule as amended by Senate Bill 1437. After a detailed discussion of the evidence presented at trial, the court found defendant was a major participant who acted with reckless indifference to human life, and summarily denied the petition without issuing an order to show cause or holding an evidentiary hearing. The court also found Senate Bill 1437 unconstitutional.

DISCUSSION

I

*Overview of Senate Bill 1437*

Senate Bill 1437 was enacted to "amend the felony murder rule and the natural and probable consequences doctrine, . . . to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) Senate Bill 1437 achieves these goals by amending section 188 to require that a principal act with express or implied malice (§ 188, as amended by Stats. 2018, ch. 1015, § 2), and by amending section 189 to state that a person can be liable for felony murder only if (1) the "person was the actual killer"; (2) the person, with an intent to kill, was an aider or abettor in the commission of murder in the first degree; or (3) the "person was a major participant in the underlying felony and acted with reckless indifference to human life." (§ 189, subd. (e), as amended by Stats. 2018, ch. 1015, § 3.)

Senate Bill 1437 also added section 1170.95 to provide the resentencing petition process for a "person convicted of felony murder or murder under a natural and probable consequences theory." (§ 1170.95, subd. (a).) After a defendant submits a petition and the court performs an initial review for missing information, subdivision (c) of section 1170.95 provides: "The court shall review the petition and determine if the petitioner has

7

made a prima facie showing that the petitioner falls within the provisions of this section. If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor response is served. These deadlines shall be extended for good cause. If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause."

We note that multiple recently published cases, now under review by our high court, have concluded that section 1170.95, subdivision (c) requires the trial court to make two *separate* prima facie determinations: one *before* appointing counsel and receiving briefing, and one *after* those procedural steps have been taken. (See, e.g., *People v. Verdugo* (2020) 44 Cal.App.5th 320, 327-329, review granted Mar. 18, 2020, S260493; *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1137, review granted Mar. 18, 2020, S260598.)

Following an order to show cause, the court must hold a hearing "to determine whether to vacate the murder conviction and to recall the sentence . . . ." (§ 1170.95, subds. (c), (d)(1).) At that hearing, the prosecution bears the burden of proving beyond a reasonable doubt that the defendant is not eligible for resentencing. (§ 1170.95, subd. (d)(3).) "The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens." (*Ibid.*) The parties also may waive a resentencing hearing and stipulate that a defendant "is eligible to have his or her murder conviction vacated and for resentencing." (§ 1170.95, subd. (d)(2).)

"The Legislature passed Senate Bill 1437 by a two-thirds vote in the Senate and a less-than-two-thirds majority in the Assembly." (*People v. Superior Court (Gooden)* (2019) 42 Cal.App.5th 270, 277 (*Gooden*).)

8

## II

### *Constitutionality of Senate Bill 1437*

The trial court determined that Senate Bill 1437 unconstitutionally amended Proposition 7 and Proposition 115.  The parties disagree, as do we.

Several Courts of Appeal--including this one--have rejected the arguments the trial court relied upon in finding Senate Bill 1437 unconstitutional.  In *Gooden, supra*, 42 Cal.App.5th at pages 279 through 289 and *People v. Lamoureux* (2019) 42 Cal.App.5th 241 at pages 250 through 251, the courts concluded that Senate Bill 1437 does not unconstitutionally amend Propositions 7 and 115.  (Accord, *People v. Bucio* (2020) 48 Cal.App.5th 300, 311-312; *People v. Cruz* (2020) 46 Cal.App.5th 740, 747; *People v. Solis* (2020) 46 Cal.App.5th 762, 769.)  We agreed with the above authorities in *People v. Superior Court (Ferraro)* (2020) 51 Cal.App.5th 896, 909-917 [Senate Bill 1437 was not an invalid attempt to amend Prop. 7 or Prop. 115].

Given the lengthy and thoughtful discussions in each of the above published opinions, we see no need to address these contentions further.  It suffices to say that we agree with those courts concluding Senate Bill 1437 did not unconstitutionally amend Proposition 7 or Proposition 115.

## III

### *Denial of Section 1170.95 Petition*

Defendant contends the trial court erroneously applied the amended felony-murder rule when determining he failed to satisfy his prima facie burden under section 1170.95; he claims he established a prima facie showing that he was entitled to relief since he was convicted on a natural and probable consequences theory.  Under the natural and probable consequences doctrine, a person who knowingly aids and abets criminal conduct is guilty of not only the intended crime, known as the target offense, but also of any other crime the perpetrator actually commits, known as the nontarget offense, that is a natural

9

and probable consequence of the intended crime. (*People v. Medina* (2009) 46 Cal.4th 913, 920.)

While the People concede the court erred in analyzing the case under the felony-murder rule as the underlying felony merged with the homicide, they nevertheless argue defendant could still be convicted of second degree murder because the evidence was sufficient to show defendant aided and abetted the shooter with the intent to kill and acted with implied malice.

We agree the trial court erred in treating the case as involving the felony-murder rule rather than the natural and probable consequences doctrine. The felony-murder rule does not apply where the underlying felony is assaultive in nature. (*People v. Chun* (2009) 45 Cal.4th 1172, 1200.) As our Supreme Court has explained, under those circumstances the felony merges with the homicide. (*Ibid.* ["[w]hen the underlying felony is assaultive in nature . . . the felony merges with the homicide and cannot be the basis of a felony-murder instruction[;] [a]n 'assaultive' felony is one that involves a threat of immediate violent injury"].)

Furthermore, we conclude the trial court engaged in improper fact finding under section 1170.95 when considering whether defendant had established the requisite prima facie eligibility showing under the statute, regardless of the analysis applied. (See, e.g., *People v. Drayton* (2020) 47 Cal.App.5th 965, 980-981 [analogizing to habeas corpus procedures to determine when trial court may engage in factfinding or credibility determinations in considering a defendant's prima facie showing] (*Drayton*).) As *Drayton* explained, "when assessing the prima facie showing, the trial court should assume all facts stated in the section 1170.95 petition are true. [Citation.] The trial court should not evaluate the credibility of the petition's assertions, but it need not credit factual assertions that are untrue as a matter of law--for example, a petitioner's assertion that a particular conviction is eligible for relief where the crime is not listed in subdivision (a) of section 1170.95 as eligible for resentencing." (*Id.* at p. 980.) The

10

"authority to make determinations without conducting an evidentiary hearing pursuant to section 1170.95, [subdivision] (d) is limited to readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion (such as determining whether the petitioner showed reckless indifference to human life in the commission of the crime)." (*Ibid.*)

If, accepting the facts asserted in the petition as true, the petitioner would be entitled to relief because he or she has met the requirements of section 1170.95, subdivision (a), then the trial court should issue an order to show cause. (§ 1170.95, subd. (c); *Drayton, supra*, 47 Cal.App.5th at pp. 980-981.) Once the trial court issues the order to show cause under section 1170.95, subdivision (c), it must then conduct a hearing pursuant to the procedures and burden of proof set out in section 1170.95, subdivision (d), unless the parties waive the hearing and stipulate to the defendant's entitlement to relief. (§ 1170.95, subd. (d)(2).)

Here, the trial court erred under section 1170.95, subdivision (c) in summarily denying defendant's petition because defendant made a prima facie showing of eligibility for relief. He filed a petition stating (1) he was charged with murder under the natural and probable consequences doctrine; (2) he was convicted of second degree murder; and (3) he could not be convicted of second degree murder based on the natural and probable consequences doctrine under the post-January 1, 2019 definition of murder. (§ 1170.95, subd. (a).) There were no facts in the trial court record that, as a matter of law, refuted defendant's assertion that he had been convicted of second degree murder on a natural and probable consequences theory, and the trial court itself recognized that defendant had been convicted of murder on such a theory. Our prior opinion, moreover, expressly addressed defendant's claim on appeal that the court's instruction on the natural and probable consequences doctrine was flawed. (*Silliman, supra*, C072774 at pp. 6-8.)

At this stage of the petition review process under section 1170.95, subdivision (c), the trial court should not have engaged in any factfinding to determine whether defendant

11

acted with express or implied malice as now required by amended section 188 (or, if the felony-murder rule had applied, whether defendant was a major participant who acted with reckless indifference to human life under amended section 189). The tests governing whether a defendant acted with malice (see, e.g., *People v. Cravens* (2012) 53 Cal.4th 500, 507 [discussing express and implied malice]), or in the case of the felony-murder rule whether a defendant was a major participant who acted with reckless indifference to human life (see, e.g., *People v. Banks* (2015) 61 Cal.4th 788, 794, 803 [addressing factors to consider when determining whether a defendant was a major participant]; *People v. Clark* (2016) 63 Cal.4th 522, 618-623 [discussing factors to consider to determine whether a defendant acted with reckless indifference to human life].)

*Cravens*, we note, recognized that malice may be express or implied; express malice exists when a defendant manifests a deliberate intention to take away the life of another, implied malice is established if the killing is proximately caused by an act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life. (*People v. Cravens, supra*, 53 Cal.4th at p. 507.)

In *Banks*, our Supreme Court addressed under what circumstances an accomplice who lacks the intent to kill may qualify as a major participant under section 190.2, setting forth a list of nonexclusive factors to consider: "What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or using lethal weapons? What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants? Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death? What did the defendant do

12

after lethal force was used?" (*People v. Banks, supra*, 61 Cal.4th at p. 803.) The court emphasized, however, that "[n]o one of these considerations is necessary, nor is any one of them necessarily sufficient." (*Ibid.*)

In *Clark*, the Supreme Court announced related considerations for determining whether a defendant acted with "reckless indifference to human life," including the knowledge of, use, and number of weapons, the defendant's physical presence at the crime and opportunities to restrain the crime or aid the victim, the duration of the felony, the defendant's knowledge of a cohort's likelihood of killing, and the defendant's efforts to minimize the risks of violence during the felony. (*People v. Clark, supra*, 63 Cal.4th at pp. 618-623.)

These matters necessarily require the court to weigh the facts and to draw supportable inferences.

In assessing whether defendant made a prima facie eligibility showing, the trial court should not have evaluated and weighed the evidence but instead should have accepted defendant's asserted facts as true. Assuming the facts asserted in defendant's petition were true, he fulfilled the requirements for relief listed in section 1170.95, subdivision (a). Thus, the trial court should have appointed him counsel as requested, obtained briefing from the parties, and issued an order to show cause for an evidentiary hearing. (*Drayton, supra*, 47 Cal.App.5th at pp. 982-983.)

We therefore reverse the trial court's order denying the petition and remand with directions to appoint defendant counsel if he is not still represented by retained counsel, issue an order to show cause under section 1170.95, subdivision (c), and hold a hearing under section 1170.95, subdivision (d). We express no opinion about whether defendant is entitled to relief following the hearing. (§ 1170.95, subd. (d)(2).)

DISPOSITION

The order denying defendant's petition for resentencing under Penal Code section 1170.95 is reversed. The matter is remanded with directions to issue an order to show cause and hold a hearing to determine whether to vacate defendant's murder conviction and recall his sentence and resentence him. (§ 1170.95, subds. (c), (d).)


_____
HULL, J.


We concur:


_____
BLEASE, Acting P. J.


_____
MURRAY, J.

14